All right, Mr. Landers, we're ready when you are, sir. Good morning, I'm Jonathan Landers, I represent Mr. Ware, may it please the court. One of the most indispensable duties of counsel is the duty of loyalty, and that duty was breached here when Mr. Prosper represented, at the same time, Mr. Van Zant and Mr. Ware. We raised two issues on appeal. The first one is whether or not there was an actual conflict of interest that adversely affected Mr. Ware's case, and the second one is whether or not, in the alternative, the trial court erred in not holding an evidentiary hearing in this case. I'd like to start with issue number one. The test sounds easy, whether or not there's an actual conflict of interest and an adverse effect. The application of the more difficult. It might be easier to say that there's an actual conflict of interest when there's an adverse effect, and I'll start with the actual conflict of interest here. The district court correctly assumed there was an actual conflict that took place. One thing that the court should remember when reviewing what happened in this case is that we're not talking about solely a successive conflict of interest. And I'll be the first to admit, it's a little unfair to Mr. Prosper what happened here, because he most likely didn't know what was going on in this case until April 10th of 2018. But prior to that meeting, this could have been avoided, because we've heard from the record that the FBI had done a deconfliction on this case, most likely contacted the trial prosecutors, who then requested that this meeting be set up. And when I say the trial prosecutors, I'm talking about the prosecutors in Mr. Ware's case. They could have known that Mr. Prosper was kind of walking into a trap here. But what happened is, on April 10th, when Mr. Ware shows up for this debrief with, I'm sorry, when Mr. Prosper shows up with Mr. Van Zant, is it very quickly, apparently, turns to providing information directly adverse to Mr. Ware. And I would suggest that at that point, an action could have been taken that was not. Mr. Prosper could have stopped that meeting. He could have taken corrective action in immediately getting off of both men's cases. And he could have immediately withdrawn from the case. Now, the government has argued that Mr. Prosper did immediately withdraw from the case. But we do have a seven-day gap. Let me ask you this on that point. When do you say the adverse effect sort of triggered or crystallized, so to speak? You know, was it between April 10th and April 17th? Or, you know, is there, I don't mean that there's a magic line, but, you know, is there somewhat of a palpable period where, you know, something here is a little bit of a riot, some action taken or whatever? Yes, Your Honor. And I'll just go ahead and skip forward to that adverse effect. The adverse effect first started on April 10th. At that point, once it becomes clear that one client is providing damaging evidence to the other, counsel had a duty to immediately stop that meeting. He had a duty to take some sort of corrective action because he couldn't look out for both Mr. Van Zandt's best interest and Mr. Ware's best interest. We know that he picked Van Zandt for whatever reason. He says that in his affidavit. He thought this was Mr. Ware's fault. He believed Mr. Van Zandt. And so he took no corrective action. He then waited, and I'm going to also state this. Just like in Pareo where the court, Pareo number one, where we don't really know what happened when the conflict was first arising, the record's silent on what happens in these seven days, okay? We don't know what happens in these seven days. So it might be in the best interest of the facts and justice to remand this for hearing. But what seems apparent is that no corrective action was taken whatsoever. There's no evidence that counsel went out, immediately told, stop this meeting, told Mr. Ware, I'm withdrawing from your case. That no doubt damaged Mr. Ware's case because when he's arrested seven days later, he's apparently not been advised not to say anything because he makes a vague statement, which is also used against him out of sentencing. It seems that Mr. Ware was completely caught off guard here. So the adverse effect starts on April 10th, and it continues at least until April 17th. And that's the date that both the motion to withdraw is filed. The government files a motion to continue the revocation proceedings. So apparently the government knew what was going on as well. So can you tell me what exactly Prospera would have done differently for Ware? I mean, can you identify the specific, plausible, alternative strategy that Prospera failed to pursue because of these divided loyalties? First of all, let me say that ethically, if you read the ethical rules, he had to withdraw from both cases, both because he had a concurrent conflict, and then he also had a successive conflict. He wasn't permitted ethically under the Texas rules or the model rules. It's rule 1.9 and 1.09 to continue his representation of Mr. Van Zandt. But to answer your question about plausible alternatives, if I could, I would first point out that that is, I don't believe that's the only test for adverse effect. In Shepard 2, I believe, no, it was Prospera or Pareo, it was stated that you may prove adverse effect in this way by showing these plausible alternatives. When I went back and reread, I think it was Pareo, Pareo 1, it did use this is the way to prove this. But the alternatives would have been immediately withdrawal from both cases. You have to stop that meeting. You can't sit through a meeting with the government while one agent, one client is debriefing and giving harmful evidence, which results in a seven-year increase in the sentence at the end of this or more. And then the other alternative is most likely to take some sort of corrective action and immediately let Mr. Ware and Mr. Van Zandt know, you have a conflict of interest, you're withdrawing from their cases. I would point out that the Glasser, the Supreme Court case from 1942, the Holloway v. Arkansas case, they always tell us that determining the precise degree of prejudice is difficult and unnecessary. And that's the reason in these conflict of interest cases we have a lower, a lighter lift, as it's been said, for defendants. We don't have to prove prejudice. We don't have to prove some but-for causation. And I would note that the district court seemed to apply some sort of direct causation test. And I'll quote, that Ware has not shown that these results occurred because of pretrial counsel's representation of Van Zandt. That's the wrong test. And when you have these conflict of interest cases, oftentimes you can't tell exactly what would have happened had there not been a conflict of interest. I would point out that the case we rely on the most is the Shepard, the two Shepard cases. Shepard is very important because it establishes a few things. Number one, that concurrent pretrial representation can lead to a violation of the Sixth Amendment. I would point out that in Shepard, just like in this case, pretrial counsel withdrew before the important hearing there. It was a trial. Here it was sentencing. And the court in a footnote discussed that the court wasn't even considering the effect it had on the trial. The issue there was what happened pretrial. The two ways that Shepard was harmed was, number one, counsel represented another client providing evidence to the government. And number two, and this is another way to prove adverse effect, abandoning the client. And there the abandonment was not pursuing plea deals. Here the abandonment is apparently taking no corrective action in the most important seven days of Mr. Ware's case, quite frankly. But of course, sir, if Ware had immediately withdrawn, I think that would have been a problem. Sorry, if the counsel had immediately withdrawn, Ware's out on bond, right? How are they going to appoint a new lawyer who can get in touch with him within that period of time? Well, I think the facts, once again, we didn't have a hearing, so I'm not extremely clear on how the new counsel was retained. But I think that counsel actually, Mr. Prospera actually recruited these other two lawyers to come in for Mr. Ware after he withdrew seven days later. That's my understanding of the record here. But what I'm saying is some corrective action needed to take place immediately. And that didn't happen. Rather than trying to... But if I understand you correctly, you're saying you're not arguing what one of the grounds that Judge Fitzwater looked at, which is the pretrial counsel violated by virtue of his presence at Van Zandt's counsel at the sentencing hearing. So you're not arguing that. You're just arguing the fact that there was a seven-day gap, right? And that that was an adverse effect because there was a seven-day gap, right? We have to show any adverse effect. And I agree. Just like in Shepard, we're not looking at ineffectiveness of sentencing counsel here. What we're doing is we're looking for any adverse effect the conflict had on this case. And just like Shepard, we have one client providing damaging evidence to the government against another client to benefit himself. Everyone knows Mr. Van Zandt was trying to benefit himself there with Mr. Prosper's help. And then you have also this abandonment, apparently, of seven days where the records suggest, it's not clear, that Mr. Ware had no idea what was going on behind the scenes here. So to answer your question, what counsel should have done, what the ethical rules required, April 10th as this debrief is going on, once he hears that Ware is involved, he needs to stop that debrief. He needs to withdraw from both cases and do everything he can to ensure these men are not left without counsel in the short term. So you would say the seven days is, the gap in there is fatal, so to speak. I mean, there's an immediacy upon noting the potential conflict, you would argue that counsel is duty-bound to withdraw whatever at that point. Is that what you're arguing? The argument is that's certainly the most important seven days for Mr. Ware's case. It threw everything else he'd done out the window in those seven days and apparently left him essentially without counsel at that point. Although counsel didn't withdraw until the revocation hearing that was later postponed, I think three days for new counsel to get  So on that point, is Shepard what you're leaning on most? Right. Yes, Judge. So Shepard, you also have pretrial representation is the issue, not representation at trial. Both clients are involved in different cases in different courts. You have third, that unlike Mr. Ware's case, the government and Shepard did take corrective action and tried to prevent the conflict, which could have solved the problem here, assuming that the trial prosecutor did know of the conflict ahead of the April 10th meeting. You also have one client receiving a benefit for informing against another client. And I would point out in Shepard, the court found an adverse effect, even though the district court took a corrective action. In Shepard, the other client, the second client, not Shepard, was not allowed to testify. And despite that corrective action taken at trial, there was still an adverse effect, which just goes to show we can't always in these conflict cases tell exactly what the harm is. That's why we don't have the Strickland test and that's why the district court erred and required some sort of proof of direct causation. The government argues that when Prosper withdrew as Ware's counsel, that that cured any conflict that could have arisen after. I read your brief as disagreeing with that. And so my question to you is what's your best case that supports a Sixth Amendment violation occurs even after counsel withdraws? Sure. So I think we do disagree with the idea that there was an immediate withdrawal, number one. Number two, it's Shepard. Although the government is correct that Shepard's counsel waited longer to withdraw. I think there's 21 days before trial, something like that. The court in Shepard was also clear that the finding of adverse effect was not related to that late withdrawal. It was related to the harm from the conflict itself. So once again, Shepard is our best case that simply withdrawing from the matter does not cure the conflict. I only have 10 seconds. I would just like to point out briefly that in both Shepard and Perillo, one, the first case, both times the cases were remanded for further evidence. Madam Clerk, give him two minutes. In Perillo, the reason why the case was remanded is that the record was silent as what happened in California. There, I think it was a lawyer, last name, Skelton, represented two people pre-trial. And he actually flew to California as part of his representation of a witness in the case. And the court didn't have any idea what had happened. We also have a silent record on exactly what happened in the seven days prior to withdrawal in this case. We have no idea if there was corrective action taken. All we have is counsel's affidavit where he makes clear he picked Van Zandt. He put his best efforts behind Van Zandt because he believed Van Zandt and thought this was Mr. Ware's fault. He says he spoke to other counsels about what he should do, apparently, and then he withdrew. But what we don't know is whether or not any corrective action was taken in those seven days. What we don't know, and this would have been another plausible strategy that could have been taken, is whether or not he advocated for Ware, noting that Van Zandt's story had changed at all times. Let me ask you one other question I meant to ask earlier. Yes, Your Honor. Judge Fittsport did not hold an evidentiary hearing, and you know the standard of use, abuse of discretion, which is a tall hill to get over. So my question is, to what extent, assuming arguendo, we were to say remand for hearing, et cetera, how would the hearing ameliorate the concerns that you're articulating? I mean, how are you less able to articulate the concerns that you're adroitly making to us now? How would an evidentiary hearing, you know, either harm you otherwise with, you know, more potent argument to make, or would we be in a sort of a degrees deal? You understand what I'm saying? Yes, Your Honor. I mean, I get it that you said he wanted a hearing, standard of use, abuse of discretion, which is hard to go by. So I'm trying to palpate to what extent, even if we were to do that, how does that put you in a position to make any more potent argument than you're making here? Do you get ... I do understand what you're saying, Judge. First of all, the 2255B standard for whether or not there should be hearing is not that difficult to meet unless it's clear from the record that there could be no relief on this claim. So I think in this circumstance, the abuse of discretion standard is, if you look at Pree on Shepard, the first ones, is not as tall of a hill as it usually is, I would say. But to answer your question directly, I suspect that if we had a hearing, it would establish that no corrective action was taken whatsoever related to Mr. Ware. But at the same time, I wish right now this court had all the facts. Mr. Prosper gave an affidavit. It's very brief. It's a few sentences. It's less than a page. And just like in Pree, just like in Shepard, it would give the court the full factual background in deciding this important constitutional question. All right. Okay. Thank you, sir. You reserve your vote. All right. Ms. Mitchell. May it please the court. Amy Mitchell on behalf of the United States. The question before the court is a narrow one. It's whether the district court erred when it determined that any conflict in this case did not affect the representation that Ware received from Mr. Prosper. And the district court's conclusion was correct, because Ware fails to identify what Mr. Prosper did or didn't do as a result of the conflict that impacted the representation. Yes, Ware's pretrial release was revoked, and he lost acceptance of responsibility. But those are not things that came out of the conflict. That came out of Van Zandt's disclosure. And that disclosure took Mr. Prosper by surprise, and he then promptly withdrew from the case. I want to turn to the seven days that Mr. Landers focused on. And in that time, it's not clear that Mr. Prosper would have known there was actually a conflict. Mr. Prosper had represented Ware throughout his case, and he knew what his conditions of release were. He knew that they were broader than what we typically see in a case like this. And so he would not necessarily have known that Ware being there was a problem for Ware. And additionally, Mr. Prosper's affidavit states that he consulted with counsel. Taking a couple of days to find out what the facts really were, and then also to find out what law applied and what course he should take is completely reasonable. And really, on the calendar, it's seven days. But that meeting on April 10th happened on Wednesday. There's an arrest warrant for Ware that's issued on And then on Monday, he's arrested. So we're really talking about two business days. And during that time, whatever Prosper may have suspected, there's no indication that he knew for sure that Ware was violating his conditions of release. Obviously, he knows that as of Monday the 16th, the next day he appears with Mr. Ware, makes sure that he gets a continuance so that he can obtain unconflicted counsel, and he moves to withdraw. And then the court grants that the following day. And because Mr. Prosper withdrew promptly once he confirmed the existence of the conflict, Ware can't identify any action or inaction that was the result of the conflict. So turning to the Sheppard cases, Ware relies on Sheppard to argue that an attorney's withdrawal doesn't necessarily mean there was no ineffective assistance. And that's true, but it's also fact-dependent. There is a much greater time period of overlap when Sheppard's attorney knows that he has a conflict. It's four months, and it is like two weeks before trial. And also, the court in Sheppard is looking back at the representation that the first attorney provided throughout the pretrial and plea process. They're not looking at what happened after. And that is actually something that Ware suggests the court should do, is look at what happened at sentencing, that there would continue to be a conflict, and that somehow the representation was affected at sentencing. But if you no longer represent Mr. Ware, then Mr. Prosper could not have, it could not have affected his representation in any way. And also, related to the sentencing, the district court on that point actually found that there was no conflict versus what it did on the period of time before, which is assume a conflict and then look at the adverse effect on the representation. So there was no conflict at sentencing, there was no actual conflict at sentencing, because Prosper at that point had been off the case, off Ware's case for like 14 months, and Ware had unconflicted counsel who did a really thorough job at sentencing for him. Again, Ware must show that an actual conflict of interest that adversely affected the conflicted attorney's representation, that's Mr. Prosper's, would have been, would have been, he would have been the conflicted attorney, but he no longer represented him, so his sentencing didn't affect his representation. All of that being said, the damage Ware blames on the alleged conflict was not caused by the conflict, it was caused by Van Zant's disclosure and Ware's illicit participation in a drug transaction. Van Zant's disclosure likely would have occurred regardless of who represented him, and he was disclosing information that he possessed independent of Mr. Prosper and about events that happened before he even hired Mr. Prosper. Because the district court correctly found that there was no detrimental effect on the representation Ware received from Prosper, we ask the court to affirm. Well, so you just say C. Shepard and stop. I don't mean that as a dismissive sort of question, but with the author sitting over here next to me, I nonetheless ask, I mean, is that basically it, C. Shepard, and you know, that kind of does it? Not necessarily. I mean, there could be a case where an attorney continues to be actively involved, even though they've officially withdrawn, and that case is Beatty versus Balcombe, that's in the briefing. And there, the attorney represents two co-defendants who have conflicting defenses. He moves for severance, which is not granted, and so Beatty gets a new counsel. But still, in that entire trial, the first attorney is the one sort of dominating the defense strategy and doing things like arguing the Rule 26 motion. So he's still actively representing Beatty, even though he officially withdrew from the case. So there can be circumstances where, you know, it could, the withdrawal wouldn't necessarily fix the problem, but here it did. And it didn't, Shepard, because there was no effect on her trial. The effect was on his failure to seek a plea agreement for her. Different question. What's the significance of Prosper's affidavit? Isn't it slightly inconsistent with, you know, what's in the record? And I guess where I go from that is to the extent that it is an affidavit, does that beget that maybe there should have been a hearing to flesh out, you know, precisely what's here? I don't think a hearing is necessary in this case, and that's because we have really a solid timeline. Because of the, in the record, we have all of the reports from the investigators, so we know what Van Zandt talked about when he talked about it and who was present at the time. And then we also have a very lengthy sentencing hearing that also lays out the timeline between when the FBI agents who are working Ware's case find out that it might be Ware and when they definitively do know, which is after that April 10th meeting. But if I heard you right, you sort of shrunk to seven days, so to speak. My words, not yours. But you say it's not really seven days, but it's sort of compressed. It was the Monday after, I think. So I guess my question is, well, I doubt the counsel opposite agrees with that. So would a hearing, you know, make clearer, you know, what is the palpable period? Not that I'm saying seven days is magic somehow, but that is the period here, seven days. And your argument, if I understand it, is that it's not actually seven days. It's a shorter period, which all the more somewhat dissipates any conflict that there might be. Is that a fair? Yes, that's fair. It's fair that this really was two business days and weekend before Mr. Prosper was able to confirm that there was actually a problem for Ware and that there was a conflict of interest. Okay. If there are no other questions, we ask for it to affirm. All right. Thank you, ma'am. Thank you. Appreciate it. All right. Back to you, Mr. Landis, or Bo, if you'd like. The government raised an interesting point here that maybe Mr. Prosper, even after April 10th, was not aware that he had a conflict for reasons that I'd prefer not to discuss today. But I would point out once again Shepard. In Shepard, there is a statement that the counsel who withdrew, the conflicted counsel, didn't understand that he had a conflict because a different name was being used for Shepard at that meeting. So once again, Shepard hits on all fours. Two other things I would point out. And I'm not trying to jump on Mr. Prosper. This is an interesting way for a conflict to arise, in my opinion. But the conflict did continue through sentencing as far as ethical rules are considered. That would be the ABA Rule 1.9 and the Texas Disciplinary Rule 1.09. Because at that point, he is representing one counsel taking a directly adverse, one client taking a directly adverse stance against his former client in a substantially related matter. Finally, I would point out, I believe the government was pointing to page 7 of the district court's ruling where the court is talking about how Mr. Prosper withdrew before sentencing and cites the Guidry case for the proposition that there's no clearly established law that the conflict of interest of a counsel who withdraws can form the basis of ineffective assistance of counsel. I would just point out that Guidry case is a state habeas case, so that 2254D would apply. And that's why it's not of really any bearing on this court, because this court's already decided Shepard in the pretrial context. Once again, in our point of view, the main error here is that the district court below employed some sort of direct causation test. It's essentially what the government's asking you to do. It's asking you to say, okay, did Mr. Prosper cause the harm on Mr. Ware's case? We'll never know that, and it's not the test. The test here is much lower. It's an adverse effect test. It's more malleable to the situation, and we argue that it's been met. We ask that the court reverse the decision of the lower court on the Sixth Amendment claim or in the alternative to remand for an evidentiary hearing so that we can figure out all the facts relevant to the claim. Thank you for your time. All right. Thank you, counsel. Appreciate the case will be submitted.